UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

KENNETH BARTLETT,
       Plaintiff,

       v.                                    CIVIL ACTION NO.
                                      13-11479-WGY
MASSACHUSETTS PAROLE BOARD,
ET AL.,
       Defendants.

<u>MEMORANDUM AND ORDER</u>

YOUNG, D.J.

<u>BACKGROUND</u>

On June 17, 2013, Plaintiff Kenneth Bartlett ("Bartlett"), a prisoner at MCI Concord,

filed a self-prepared civil rights action against the Massachusetts Parole Board ("MPB"), and

members of the MPB, including Josh Wall, Cesar Achilla, Charlene Bonner, Shelia Dupre, Ina

Howard-Hogan,  Roger Michel, and Lucy Soto-Abbe.  Bartlett alleges the defendants violated

his due process rights by arbitrarily applying false and misleading facts and evidence to deny

him parole and to justify a second consecutive five-year parole hearing review date.  He seeks

declaratory and injunctive relief, as well as nominal damages.

The relevant background is a follows.  Bartlett was convicted in 1992 for murder.  In

May, 2007, the MPB defendants held a parole hearing and denied parole.  He then was given a

<u>five-year</u> parole review.  He contends that this five-year period is in violation of state law

because, at the time his offense was committed (in 1992), Massachusetts General Laws Chapter

127, § 133A provided for a <u>three-year</u> parole review date instead of a five-year parole review

date.

On May 22, 2012, the second five-year parole review hearing was held before the

defendants.  Bartlett again was denied parole, on the grounds that while he was incarcerated, his

institutional adjustments were poor.   The defendants noted that he had accrued numerous

disciplinary reports for bad behavior, including assaults on inmates and correctional officers, and

disciplinary reports for the possession and/or use of illegal drugs.   Further, the defendants cited

to the multiple times that Bartlett was returned to higher security to serve lengthy terms in

disciplinary detention for a variety of violations.   Additionally, the defendants noted that his

participation in programs was limited due to his frequent transfer and placements in

administrative detention.   Finally, the defendants noted that the Department of Correction

identified Bartlett as gang-involved.   In sum, the defendants found Bartlett's institutional history

to be "among the very worst."   Compl. at ¶ 18.

 Bartlett claims that the facts relied upon by the MPB members were distorted and were

placed falsely within the record.   Specifically, he contends that there is tangible evidence

undermining the record with respect to his possession of illegal drugs, his involvement in prison

programs, and his gang involvement.   He also takes issue with the characterization that his

institutional history was the "very worst" because there was no evidence of any gang

involvement nor any evidence to compare his institutional history with that of other inmates.

Further, Bartlett claims that his disciplinary report regarding the unauthorized use of drugs or

drug paraphernalia was dismissed.   Finally, he contends his risk of violence and recidivism was

assessed at "low."   Id. at 24-25.

 Bartlett appealed the MPB's decision denying him parole and setting a five-year parole

review, but his appeal also was denied.   He again asserts that the imposition of a five-year parole

review, rather than a three-year parole review, violates state law, citing Mass. Gen. Laws ch.

211E, § 3(I) (Recommended sentencing guidelines).

 In addition to filing the Complaint and exhibits, Bartlett filed a Motion for Leave to

Proceed *in forma pauperis* (Docket No. 2) and a Motion for Appointment of Counsel (Docket No. 3).

On June 25, 2013, this action was reassigned from Magistrate Judge Boal to the undersigned.  The same day, a Procedural Order (Docket No. 7) issued denying Bartlett's Motion for Leave to Proceed *in forma pauperis* because he did not submit his certified prison account statement.  On July 10, 2013, Bartlett filed a renewed Motion for Leave to *Proceed in forma pauperis* (Docket No. P), along with his prison account statement (Docket No. 10). Additionally, Bartlett filed a package of Exhibits (Docket No. 11) to supplement his Complaint. These include copies of the MPB decision dated June 5, 2012, a Disciplinary Report for May 7, 2009, a Disciplinary Report for August 2-10, 2009, Bartlett's Personalized Program Plan (re: Risk Assessment), Bartlett's appeal, dated June 22, 2012, and the MPB's action dated December 11, 2012 indicating the request was denied.

<u>DISCUSSION</u>

I.     <u>The Renewed Motion for Leave to Proceed *In Forma Pauperis*</u>

Upon review of the financial disclosures contained in Bartlett's renewed *in forma pauperis* motion and in his prison account statement, this Court finds he lacks funds to pay the civil action filing fee.   Accordingly, his Renewed Motion for Leave to Proceed *in forma pauperis*  (Docket No. 9) will be <u>ALLOWED</u>.  However, because Bartlett is a prisoner, he is obligated to make payments toward the filing fee pursuant to 28 U.S.C. § 1915(b).

In light of this, it is hereby Ordered that:

A.     Plaintiff  is assessed  an initial partial filing fee of <u>$36.59</u>, pursuant to 28 U.S.C.

§ 1915(b)(1)(B);[1] and

B.      The remainder of the fee $313.41 is to be assessed and collected in accordance

        with 28 U.S.C. § 1915(b)(2).

This assessment is made apart from any other assessments made in other civil actions

filed by Bartlett; however, for purposes of clarification for crediting any funds received, and to

facilitate proper record-keeping by the Treasurer's Office at MCI Concord and by the Clerk's

Office Accounting Department, this Court intends that any funds received from Bartlett's prison

account first be applied to any prior Order of a Court assessing a filing fee pursuant to 28 U.S.C.

§ 1915.[2]

II.     Screening of the Complaint

Because Bartlett is a prisoner, he is subject to the provisions of the Prison Litigation

Reform Act.  The Prison Litigation Reform Act of 1995 ("PLRA"), Title VIII of Pub.L. 104-134,

110 Stat. 1321-1375 (1996), enacted several provisions which grant the court the authority to

screen and dismiss prisoner complaints.  See 28 U.S.C. § 1915 (proceedings in forma pauperis);

---

[1]This assessment was based on a manual calculation of the average monthly deposits over a six-month period based on the prison account information submitted by Bartlett.  This assessment is without prejudice to his seeking reconsideration provided he submit an alternative calculation based on credible evidence in accordance with 28 U.S.C. § 1915(b).  The assessment is made notwithstanding Bartlett currently may not have funds in his account to pay the initial partial assessment.  The in forma pauperis statute provides for assessment at the time of filing of the Complaint, but collection when funds exist.

[2]In other words, Bartlett's filing fee obligation in this action shall be collected consecutively and not simultaneously with any prior filing fee obligation imposed by any court.  See Ruston v. NBC Television, USCA No. 06-4672-cv (2d Cir. 2009) citing Whitfield v. Scully, 241 F.3d 264, 277 (2d Cir. 2001).  See also Lafauci v. Cunningham, 139 F. Supp. 2d 144, 147 (D. Mass. 2001)(reviewing decisions of the courts of appeals for the Second, Seventh, and District of Columbia circuits, and indicating that "the simultaneous collection of filing fees from indigent prisoners may raise serious constitutional concerns").

28 U.S.C. § 1915A (screening of suits against governmental officers and entities).

Section 1915 authorizes federal courts to dismiss actions in which a plaintiff seeks to proceed without prepayment of fees if the action lacks an arguable basis either in law or in fact, Neitzke v. Williams, 490 U.S. 319, 325 (1989), or if the action fails to state a claim on which relief may be granted or seeks monetary relief against a defendant who is immune from such relief.  See 28 U.S.C. § 1915(e)(2)(B) (ii) and (iii).  *In forma pauperis* complaints may be dismissed *sua sponte* and without notice under § 1915 if the claim is based on an indisputably meritless legal theory or factual allegations that are clearly baseless.  Neitzke, 490 U.S. at 327-328;  Denton v. Hernandez, 504 U.S. 25, 32-33 (1992).

In connection with the preliminary screening conducted here, Bartlett's Complaint is construed generously because he is proceeding *pro se.*  Hughes v. Rowe, 449 U.S. 5, 9 (1980); Haines v. Kerner, 404 U.S. 519, 520 (1972); Instituto de Educacion Universal Corp. v. U.S. Dept. of Education, 209 F.3d 18, 23 (1st Cir. 2000).  However, even under a broad reading, the claims presented in this action does not pass muster for the reasons set forth below.

III.    Statute of Limitations Bars Claims Relating to the 2007 Imposition of a Five-Year Review

Bartlett's claim of due process violations arising from the 2007 MPB decision setting a five-year parole review (instead of a three-year parole review) is barred by the statute of limitations applicable to cases filed under 42 U.S.C. § 1983.[3]  Because § 1983 contains no

---

[3]Section 1983 of Title 42 creates a cause of action for persons who are denied a federally protected right by a person acting under color of state law.  See, e.g., Baker v. McCollan, 443 U.S. 137 (1979) (constitutional deprivations); Maine v. Thiboutot, 448 U.S. 1 (1980) (statutory deprivations).  "Section 1983 'is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred.'"  Felton v. Lincoln, 429 F. Supp. 2d 226, 238 (D. Mass. 2006) (quoting Graham v. Connor, 490 U.S. 386, 393-94 (1989)); 42

limitations period, federal courts borrow the relevant state-law statute of limitations for personal

injury torts.  See Wilson v. Garcia, 471 U.S. 261, 266-67 (1985) (directing federal courts to look

to state law for the relevant statute of limitations for § 1983 claims); McIntosh v. Antonino, 71

F.3d 29, 34 (1st Cir. 1995).  In Massachusetts, that period is three years.  Mass. Gen. Laws ch.

260, § 2A.

In light of this, Barlett's claim that in 2007, the MPB and its members violated his due

process rights (by imposing a five-year parole review period instead of a three-year period) is not

cognizable and will be DISMISSED.  See Crotty v.  Massachusetts Parole Board, et al., 2012

WL 3628904 (D. Mass. 2012); Civil Action No. 10-40245-FDS (Memorandum and Order

(Docket No. 30) (dismissing similar claim based on a 2003 MPB decision).

IV.    Failure to State Plausible Due Process Claims Against the Massachusetts Parole Board

Bartlett has failed to state a claim for relief against the MPB.  The Eleventh Amendment

of the United States Constitution[4] generally is recognized as a bar to suits in federal courts

against a State, its departments and its agencies, unless the State has consented to suit or

---

U.S.C.A. § 1983.  "It is well established that 'a litigant complaining of a violation of a
constitutional right does not have a direct cause of action under the United States Constitution
but [rather] must utilize 42 U.S.C. § 1983.'"  Wilson v. Moreau, 440 F. Supp. 2d 81, 92 (D.R.I.
2006) (alteration in original) (quoting Arpin v. Santa Clara Valley Transp. Agency, 261 F.3d
912, 925 (9th Cir. 2001)).  The question of whether a challenge to parole procedures may be
raised in a § 1983 action was addressed by the Supreme Court in Wilkinson v. Dotson, 544 U.S.
74 (2005).  The Court held such challenge could proceed by way of a § 1983 action (as opposed
to a habeas petition).

[4]The Eleventh Amendment provides: "The Judicial power of the United States shall not
be construed to extend to any suit in law or equity, commenced or prosecuted against one of the
United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S.
Const. Amend. XI.

Congress has overridden the State's immunity.  See Regents of the Univ. of Cal. v. Doe, 519

U.S. 425, 429 (1997); Kentucky v. Graham, 473 U.S. 159, 167 n. 14 (1985); Alabama v. Pugh,

438 U.S. 781, 782 (1978) (per curiam); Hudson Sav. Bank v. Austin, 479 F.3d 102, 105-06 (1st

Cir. 2007).

Here, Bartlett brings suit against the MPB, which is an agency of the Commonwealth of

Massachusetts.  This Court cannot discern any claim for relief against the MPB for which the

Commonwealth of Massachusetts has waived its immunity or Congress has overridden it.

As an additional matter, § 1983 provides that any "person," acting under the color of

state law, who "subjects, or causes to be subjected, any citizen of the United States or other

person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities

secured by the Constitution and laws, shall be liable to the party injured."  42 U.S.C. § 1983.

The MPB, as a state or an agency thereof, is not a "person" for purposes of § 1983.  See Will v.

Mich. Dep't of State Police, 491 U.S. 58, 65-66 (1989).

Accordingly, all claims against the MPB will be DISMISSED.

V.      Failure to State Due Process Claims Against Individual MPB Members

A.      Failure to State a Procedural Due Process Claim

In order to make out a claim for a violation of procedural due process, Bartlett must

establish that the government has deprived him of a legitimate liberty interest.  See Bd. of

Regents of State Colls. v. Roth, 408 U.S. 564, 569-70 (1972).  This requires that he have a

"legitimate claim of entitlement" to his liberty interest and not merely an "abstract need or

desire" or "unilateral hope."  See Rodi v. Ventetuolo, 941 F.2d 22, 24-25 (1st Cir. 1991), quoting

Ky. Dep't of Corr. v. Thompson, 490 U.S. 454, 460 (1989).

Here, Bartlett's constitutional claim for due process violations based on the inaccurate information allegedly relied upon by the MPB members fails because Bartlett does not have a liberty interest in being paroled.  The United States Supreme Court has held that "there is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence."  <u>See</u> <u>Greenholtz v. Inmates of Neb. Penal and Corr. Complex</u>, 442 U.S. 1, 7 (1979).

Notwithstanding that there is no constitutional liberty interest in parole, a state may create a liberty interest in parole through its statutory scheme governing the parole decision-making process.  <u>Id.</u> at 12; <u>see</u> <u>also</u> <u>Bd. of Pardons v. Allen</u>, 482 U.S. 369, 371 (1987).

In <u>Greenholtz</u>, the Nebraska's parole statute at issue provided that the parole board "shall" order the prisoner's release "unless" certain statutory factors barring release were found to exist.  <u>Greenholtz</u>, 442 U.S. at 12.  The Court held that this mandatory language created an "expectancy of release," but "emphasize[d] that this statute has unique structure and language and thus whether any other state statute provides a protectable entitlement must be decided on a case-by-case basis."  <u>Id.</u> at 12.[5]

_____

[5]In <u>Lynch v. Hubbard</u>, 47 F. Supp. 2d 125 (D. Mass. 1999), Judge O'Toole observed that the Supreme Court had "expressed disapproval" of the mode of analysis employed in <u>Greenholtz</u> and <u>Allen</u>, and had "redirected the focus of the 'liberty interest' inquiry away from a parsing of the language of the State's statutes or regulations and back to an assessment of the nature of the deprivation at issue."  <u>Lynch</u>, 47 F. Supp. 2d at 128, <u>citing</u> <u>Sandin v. Conner</u>, 515 U.S. 472 (1995) <u>aff'd</u>, 248 F.3d 1127, 2000 WL 1824490 (1st Cir. 2000) (*per curiam*).  Under <u>Sandin</u>, state-created liberty interests are "generally limited to freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  <u>Sandin</u>, 515 U.S. at 128.  Assuming <u>Sandin</u> applied outside the conditions-of-confinement context, Judge O'Toole noted that "it is impossible to conceive how making no change in a prisoner's incarcerated status could deprive him of liberty."  <u>Lynch</u>, 47 F. Supp. 2d at 128-29. "[T]he interest that a confined prisoner has in the possibility of being released earlier than the expiration of his sentence is of a quality substantially different from the interest a paroled

Unlike the statute in <u>Greenholtz</u>, the language of the Massachusetts parole statutes does not create an expectation of parole.  <u>See</u> Mass. Gen. Laws ch. 127, §§ 130, 133. Section 130, while using the word "shall," does not impose an affirmative obligation to grant parole, but instead is phrased negatively to afford the MPB broad discretion in determining whether to grant parole.  It states, in relevant part, that: "[n]o prisoner shall be granted a parole permit merely as a reward for good conduct but only if the parole board is of the opinion that there is a reasonable probability that, if such prisoner is released, he will live and remain at liberty without violating the law, and that his release is not incompatible with the welfare of society."  Mass. Gen. Laws ch. 127, § 130.  <u>See</u> <u>Jimenez v. Conrad</u>, 678 F.3d 44, 46 (1st Cir. May 2, 2012) ("[D]ue process guarantee protects only against deprivations of life, liberty, or property, and the law has been settled for over thirty years that a convict has no liberty interest in being paroled unless the statute providing eligibility to seek parole is so phrased as to create a positive entitlement if statutory conditions are met").[6]  Further, section133 of Massachusetts General Laws reiterates the discretionary nature of the MPB members determinations, stating: "parole permits may be granted by the parole board to prisoners subject to its jurisdiction at such

---

prisoner at liberty has in not being reconfined....A decision to deny parole, where the grant or denial of parole is subject to the broad discretion of the executive, is not a withdrawal of something that the inmate has, but merely of something he *hopes* to have."  <u>Id.</u> at 129.

[6]In <u>Jimenez</u>, the plaintiff prisoner was denied parole by the MPB in 1999, 2004, and 2009.  He then sued under § 1983 for injunctive and declaratory relief based on alleged due process and equal protection violations.  In affirming the District Court's dismissal of the case, the United States Court of Appeals for the First Circuit ("First Circuit") stated that Massachusetts statute raised no expectation of a positive entitlement to parole.  Rather, the statute provides that parole shall be granted only if the opinion of the board is that there is a reasonable probability that the prisoner will not violate the law if granted release.  <u>Jimenez</u>, 678 F.3d at 46.

time as the board in each case may determine." Mass. Gen. Laws ch. 127, § 133.

In addition, MPB regulations state that "[n]o recommendation as to the suitability for parole release may be considered as binding upon the Parole Board Members' discretionary authority to grant or deny parole." 120 Mass. Code Regs. 300.05(2). Further, in making a parole determination, MPB members may consider certain factors enumerated in the regulation, but they are not required to do so. Id. at 300.05(1)(a)-(i).

This Court has the benefit of Massachusetts state court decisions interpreting §§ 130 and 133 as not creating a liberty interest in parole. In Greenman v. Mass. Parole Bd., 405 Mass. 384, 540 N.E.2d 1309 (1989), the Massachusetts Supreme Judicial Court noted that "[t]he individual characteristics of the Massachusetts statutory parole scheme do not give rise to a liberty interest under Federal law." Id. at 389 n.3, 540 N.E.2d at 1313; see Quegan v. Mass. Parole Bd., 423 Mass. 834, 836, 673 N.E.2d 42, 44 (1996); Baxter v. Commonwealth, 359 Mass. 175, 180, 268 N.E.2d 670, 673 (1971) ("Such a permit to be at large, in the discretion of an executive administrative agency, is not a benefit to which the prisoner is entitled except as a discretionary matter.").

In Commonwealth v. Hogan, 17 Mass. App. Ct. 186, 456 N.E.2d 1162 (1983), the Massachusetts Appeals Court noted that parole is made at the discretion of the parole board. Id. at 191-92, 456 N.E.2d at 1166. "Although § 133 defines when a prisoner becomes eligible for parole, there is no requirement that he must be eligible for parole at some time during his imprisonment." Id. at 191-92, 456 N.E.2d at 1166; see Woods v. State Bd. of Parole, 351 Mass. 556, 559, 222 N.E.2d 882, 884 (1967) ("The granting of parole is discretionary....Even by a writ of mandamus, the board may be required merely to consider a prisoner's petition for parole. The

board may not be required to exercise any discretion for the benefit of a prisoner.").

Finally, of note, this Court has held, and the First Circuit has acknowledged, that the Massachusetts parole statutes do not create a protected liberty interest.  See Seaver v. Mass. Parole Bd., 2010 WL 4485947, *1 (D. Mass. 2010); Lynch, 47 F. Supp. 2d at 128; Brison v. Dubois, 1993 WL 393052, at *2 (D. Mass. 1993) ("Since the Massachusetts statute on parole, Mass. Gen. L. ch. 127, § 133A (1991), does not guarantee parole at any point, nor even provide for presumptive parole, plaintiff likewise does not have a protected liberty interest in parole on the facts alleged.  Accordingly, plaintiff was not entitled to the due process protection he claims was denied him"); see also Jimenez, 678 F.3d at 46; Lanier v. Fair, 876 F.2d 243, 251 n.10 (1st Cir. 1989).  Thus, given the language of §§ 130 and 133, as well as the interpretation of the statutes by both state and federal courts, this Court cannot find that Bartlett has stated a plausible due process claim based on the denial of parole.[7]

B.       Failure to State a Substantive Due Process Claim

"The substantive component of due process protects against 'certain government actions regardless of the fairness of the procedures used to implement them.'" Duclerc v. Massachusetts Dept. of Correction, 2012 WL 6615040, *7 citing Souza v. Pina, 53 F.3d 423, 425 (1st Cir.1995) (quoting Daniels v. Williams, 474 U.S. 327, 331, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986)). Contrary to examining the process in decision-making, substantive due process requires an assessment of the constitutionality of the decision itself, focusing on whether the governmental behavior was "so egregious, so outrageous, that it may fairly be said to shock the contemporary

---

[7]Whether a state statute creates a liberty interest protected by the Due Process clause is a matter of federal law, but federal courts are bound by a state's interpretation of its own statute. See Hamm v. Latessa, 72 F.3d 947, 954 (1st Cir. 1995).

conscience." Duclerc, 2012 WL 6615040 at  *7.  While this test is not precise, the First Circuit

has explained that factors to consider are, *inter alia*, whether the action was "inspired by malice

or sadism rather than a merely careless or unwise excess of zeal that [the action] amounted to

brutal and inhumane abuse of official power literally shocking to the conscience."  Gonzalez-

Fuentes v. Molina, 607 F.3d 864, 881 (1st Cir. 2010) (citation omitted).  Negligence alone is not

sufficient to meet the conscience-shocking standard.  Id.

   To establish the denial of substantive due process, Bartlett must identify a fundamental

right or liberty which is, objectively, "deeply rooted in the Nation's history and tradition, and

implicit in the concept of ordered liberty."  See Washington v. Glucksberg, 521 U.S. 702, 721

(1997).  As discussed above, there is no federal constitutional right to early release, and both this

Court and Massachusetts state courts have held that the Massachusetts parole statutes do not

create an expectation of, or a protected liberty interest in, parole. Thus, the denial of Bartlett's

parole did not offend any substantive due process rights.  See Malek v. Haun, 26 F.3d 1013,

1016 (10th Cir. 1994) (holding that because prisoner had no legitimate entitlement to parole,

"neither the denial of parole nor the lack of enforceable parole guidelines can constitute cruel

and unusual punishment, double jeopardy, or *ex post facto* application of the law.  A state may

establish a parole system, but is not obligated to do so.").

VI.   Failure to State an *Ex Post Facto* Claim

   Although Bartlett has not expressly asserted an *ex post facto* violation, the Court

considers this issue with respect to the parole review period challenged.  Here, the denial of

parole in this case does not constitute an *ex post facto* application of law.  Bartlett has not alleged

that his parole determination was made pursuant to a parole statute that was enacted after the

commission of his crime.  Additionally, the denial of his parole does not create "a sufficient risk of increasing the measure of punishment" because, as stated above, parole in Massachusetts is at the discretion of the parole board.  See Seaver, 2010 WL 4485947, *1 ("because the grant of parole is discretionary, and the Board may hold hearings more frequently than the maximum interval, extending the maximum interval for parole hearings from three years to five years does not 'create[ ] a significant risk of prolonging [plaintiff's] incarceration' and thereby violate the Ex Post Facto Clause.").  This issue is addressed in more detail in para. IX, *infra*.

VII.    Failure to State a Double Jeopardy Claim

        Similarly, while Bartlett does not expressly assert a violation of double jeopardy, it is clear that he was not placed in double jeopardy since the denial of parole is neither the increase nor imposition of a sentence.  Alessi v. Quinlan, 711 F.2d 497, 501 (2d Cir. 1983).  Because there is no expectation of parole under Massachusetts law, the denial of Bartlett's parole did not change the length of his sentence and did not constitute "more than one punishment for the same offense."  See Brown v. Ohio, 432 U.S. 161, 165 (1977); see also Averhart v. Tutsie, 618 F.2d 479, 483 (7th Cir. 1980) (double jeopardy protections not triggered by denial of parole; "[r]ather than constituting another punishment for the same offense, the denial of parole merely perpetuates the status quo: the prisoner remains incarcerated under a validly imposed sentence.").

VIII.   Failure to State an Eighth Amendment Claim

        Along the same lines, the denial of parole does not subject Bartlett to punishment for purposes of an Eighth Amendment claim because he continues to serve the same lawful sentence which initially was imposed by the sentencing court.  See Lustgarden v. Gunter, 966 F.2d 552,

555 (10th Cir. 1992) ("Denial of parole under a statute dictating discretion in parole

determinations does not constitute cruel and unusual punishment."); <u>Damiano v. Fla. Parole and

Prob. Com'n</u>, 785 F.2d 929, 933 (11th Cir. 1986) (noting that denial of parole is "merely a

disappointment rather than a punishment of cruel and unusual proportions").

IX.     <u>The Five-Year Parole Review Set After the 2012 Parole Hearing Does Not Violate
        Constitutional Law</u>

        Bartlett contends that when he was convicted in 1992, the statute providing for parole

review stated that there was a three-year parole review, and not a five-year parole review.   <u>See</u>

Mass. Gen. Laws. ch. 127, § 133A.  As noted above, challenges under § 1983 to the five-year

review date set in 2007 are barred by the statute of limitations.  That leaves only Bartlett's

challenge to the five-year review date set after the May, 2012 parole board hearing.

        Bartlett's argument is misplaced.  Although the statute was amended in 1996 to substitute

the time period to "five years" instead of "three years," the statute does not indicate this

amendment had retroactive effect to the date of the prisoner's conviction.  The statute provides

that: "[if] [the parole permit] is not granted, the parole board shall, at least once in each ensuing

five year period, consider carefully and thoroughly the merits of each case on the question of

releasing such prisoner on parole, and may, by a vote of two-thirds of its members, grant such

parole permit."  <u>Id.</u> at ¶ 3.  In view of the express language of the statute, the logical and

appropriate snapshot for the determination of the next parole review date is taken <u>not</u> at the time

of conviction, but, <u>at the time the parole permit is not granted</u>.  In other words, in May, 2012 ,

when the parole permit was denied by the defendants, the five-year period for review was

triggered by the statute.  Since a five-year review date was set, there is no constitutional

violation at play, and Bartlett has not pointed to any violation that would be actionable under §

14

1983 by the five-year review period.

In Crotty, *supra*, the plaintiff Richard Crotty ("Crotty"), a prisoner at NCCI Gardner, filed a similar § 1983 action against the MPB and its members. As Bartlett does here, Crotty claimed that the defendants unlawfully altered his eligibility for parole consideration and subsequent reconsideration by, *inter alia*, setting a five-year period for parole consideration rather than the three-year period provided by statute. He alleged this violated the Ex Post Facto Clause, the Due Process Clause, and the Equal Protection Clause. Judge Saylor granted the defendants' Motion to Dismiss, on various grounds, including the lack of any cognizable constitutional claims. See 2012 WL 3628904 (D. Mass. 2012); Civil Action No. 10-40245-FDS (Memorandum and Order (Docket No. 30). On April 9, 2013, the First Circuit affirmed the dismissal essentially for the reasons set forth in the District Court's Memorandum and Order. Mandate issued on May 2, 2013. Crotty v. Massachusetts Parole Board, et al., No. 12-1360 (1st Cir. 2012).

In considering the issue whether the five-year parole review violated the *ex post facto* doctrine, Judge Saylor noted that parole eligibility is a proper subject for application of the doctrine; however, the controlling factor was whether the change in Massachusetts law created a sufficient risk of increasing the punishment. See Garner v. Jones, 529 U.S. 244, 250 (2000); Corr v. Morales, 514 U.S. 499, 508 (1995). As Judge Saylor noted:

> In *Garner* and *Morales*, the Supreme Court rejected *ex post facto* challenges to state statutes that changed the frequency of parole reviews. *Garner*, 529 U.S. at 244; *Morales*, 514 U.S. at 499. Like the statutes at issue in those cases, § 133A did not modify the statutory punishment for the underlying crime, change the substantive standard for granting parole, or alter plaintiff's parole eligibility date. *See Garner*, 529 U.S. at 256; *Morales*, 514 U.S. at 507-12. Moreover, "the grant of parole is discretionary, and the Board may hold hearings more frequently than the maximum interval." *Saver v. Mass. Parole Bd.* 2010 WL 448597, at *1 (D.

Mass. Nov. 8, 2010).  Therefore, by "extending the maximum interval for parole
hearings from three years to five years [the amendment to § 133A did] not
'create[] a significant risk of prolonging [plaintiff's incarceration' and thereby did
not violated the Ex Post Facto Clause.  *Id.* (quoting *Garner*, 529 U.S. at 251).

Crotty, 2012 WL 3628904 at *5 (D. Mass. 2012); Civil Action No. 10-40245-FDS

(Memorandum and Order (Docket No. 30 at 9-10)) (brackets in original).

Next, Judge Saylor addressed the question whether the five-year review period violated

due process, where Crotty, alleged, among other things, that he was denied a fair and impartial

parole hearing (as Bartlett does here).  Because Crotty had no liberty interest in the MPB

members' decision not to grant a parole permit that would be protected under the Fourteenth

Amendment, the Due Process Clause did not apply to the decision to provide a five-year parole

review.[8]

X.       The Individual MPB Members are Entitled to Absolute Immunity For Damages

In addition to the legal impediments discussed above, there are other impediments to

Bartlett's § 1983 claims.

Bartlett seeks nominal damages, costs, and attorney's fees against the individual MPB

defendants; however, the claim for damages must be dismissed because, under the law of this

circuit, "parole board members are entitled to absolute immunity from liability for damages . . .

for actions taken within the proper scope of their official duties."  Johnson v. Rhode Island

Parole Board Members, 815 F.2d 5, 8 (1st Cir. 1987) (*per curiam*).

In making parole determinations, MPB members are performing quasi-judicial functions

---

[8]Judge Saylor also considered the equal protection claim based on parole considerations
afforded to other prisoners for different crimes.  That argument is not applicable to the
circumstances presented by Bartlett.

within the scope of their official duties and thus are treated like judges under the doctrine of absolute immunity from damages.  See Id.; Phillips v. Conrad, 2011 WL 309677, at *7 (D. Mass. 2011); see also Namey v. Reilly, 926 F. Supp. 5, 9-10 (D. Mass. 1996) (finding parole officers are absolutely immune when performing quasi-adjudicative functions in their official capacity). Other federal courts considering the issue have concluded that claims for injunctive relief and attorney's fees against parole board officials performing quasi-adjudicative functions are barred. See, e.g., Montero v. Travis, 171 F.3d 757, 761 (2d Cir. 1999); Mattatall v. Rhode Island, 2009 WL 3514634, at *4 (D.R.I. 2009).

Thus, because Bartlett's claim for monetary damages against the MPB members concern actions taken within the scope of their official duties, the MPB members enjoy immunity from liability for damages.

XI.    The Claim for Injunctive Relief is Barred

The Federal Courts Improvement Act of 1996 ("FCIA") amended § 1983 to provide that "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable."  Pub. L. No. 104-317, § 309(c), 110 Stat. 3853 (codified as amended at 42 U.S.C. § 1983).  Employing the same language, the FCIA also amended 42 U.S.C. § 1988(b) to likewise bar actions for attorney's fees against "a judicial officer."  Id. § 309(b).  Courts previously have held that MPB members are "judicial officers" within the meaning of this statute, and therefore injunctive relief or attorney's fees may not be rewarded as

there are no exceptions for this relief in the statute."[9]  See Gilmore v. Bostic, 636 F. Supp. 2d

496, 506 (S.D. W.Va. 2009); Mattatall v. Rhode Island, 2009 WL 3514634 at * 4 (D.R.I. 2009);

Pelletier v. Rhode Island, 2008 WL 5062162, *5-*6 (D.R.I. 2008).[10]

In light of this, injunctive relief is not available to Bartlett.

XII.   Declaratory Relief is Not Warranted

The Declaratory Judgment Act is "an enabling Act, which confers a discretion on the

courts rather than an absolute right upon the litigant"; courts have broad discretion to decline to

enter a declaratory judgment.  Wilton v. Seven Falls Co., 515 U.S. 277, 287 (1995) (quoting

Public Serv. Comm'n of Utah v. Wycoff Co., 344 U.S. 237, 241 (1952)).  "By the Declaratory

Judgment Act, Congress sought to place a remedial arrow in the district court's quiver; it created

an opportunity, rather than a duty, to grant a new form of relief to qualifying litigants.

Consistent with the nonobligatory nature of the remedy, a district court is authorized, in the

sound exercise of its discretion, ... to dismiss an action seeking a declaratory judgment before

trial."  Wilton, 515 U.S. at 288.  See DeNovellis v. Shalala, 124 F.3d 298, 313 (1st Cir. 1997).

---

[9]"It would be incongruous to determine that parole board members performing quasi-adjudicative functions are entitled to absolute immunity from damages but are not 'judicial officers' immune from actions seeking injunctions and attorney's fees under § 1983 and § 1988. If Congress intended the statute to apply differently to quasi-judicial officers, it would have been easy enough to say so."  Crotty, 2012 WL 3628904 at * 5; Civil Action No. 10-40245-FDS (Memorandum and Order (Docket No. 30 at 8)).

[10]The First Circuit has not directly interpreted the phrase "judicial officers" under the FICA, but has stated, without analysis, that a claim under § 1983 for injunctive relief against the commissioners of the Massachusetts Commission Against Discrimination was barred under the statute.  See Local Union No. 12004, United Steelworkers of America v. Massachusetts, 377 F.3d 64, 75 n.9 (1st Cir. 2004).  More recently, on April 3, 2013, the First Circuit affirmed the dismissal of the Crotty case for the same reasons set forth in the District Court's Memorandum and Order, which also addressed application of the FCIA as to injunctive relief against parole officers.

"The plain language of the FCIA indicates that declaratory relief is available against judicial officers under § 1983." Crotty, 2012 WL 362894 at * 5 citing Nollet v. Justices of the Trial Ct. of Com. of Mass., 83 F. Supp. 2d 204, 209–210 (D. Mass. 2000).  Thus, along these lines, the FCIA does not bar claims for declaratory relief against the MPB members in their official capacities.  Nevertheless, because § 1983 is a method for vindicating rights rather than a source of substantive rights itself, the claim for declaratory relief brought under § 1983 must identify the specific constitutional or federal statutory right infringed.  See Albright v. Oliver, 510 U.S. 266, 271 (1994).  See also Phillips v. Conrad, 2011 WL 309677, *8 (D. Mass. 2011).

Here, as discussed above, Bartlett raises no cognizable § 1983 claims based on constitutional violations, either under the Due Process Clause, the Ex Post Facto Clause, the Double Jeopardy Clause, or the Eighth Amendment.

As an additional matter, Bartlett's requests for declaratory relief include a declaration that his due process rights were violated by the defendants, a declaration that the defendants violated his due process rights under state law by twice providing a five-year review date, and a declaration that the defendants relied on false, misleading, or distorted evidence to deny parole, thereby denying him a fair and impartial hearing.  These requests for declarations relate to past alleged actions by the defendants; however, declaratory relief applies only to prospective relief, to define legal rights in connection with future conduct.  See Willner v. Frey, 421 F. Supp. 2d 913 (E.D. Va. 2006), aff'd 243 Fed. Appx. 744 (4th Cir. 2007), cert. denied 128 S.Ct. 1125 (2008); Abebe v. Seymour, 2012 WL 1130667 (D.S.C. 2012), aff'd 479 Fed. Appx. 464, *2 (4th Cir. 2012) (denying injunctive relief based on alleged wrongs occurring in prior cases before a judge, stating: "[a] declaratory judgment is meant to define the legal rights and obligations of the

parties in anticipation of some future conduct, not simply to proclaim liability for a past act."

quoting <u>Lawrence v. Kuenhold</u>, 271 F. App'x 763, 766 (10th Cir. 2008)).  In other words,

"[d]eclaratory judgments are designed to declare rights so that parties can conform their conduct

to avoid future litigation, and are untimely if the questionable conduct has already occurred or

damages have already accrued."  <u>Id.</u>

Utilizing this broad discretion, this Court holds that declaratory relief is not appropriate

in this case for all the reasons discussed in this Memorandum and Order.

In sum, because Bartlett has not stated any claims for which monetary, injunctive, or

declaratory relief can be granted, this action will be **DISMISSED** *sua sponte* in its entirety,

pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and (iii) and § 1915A.  For purposes of 28 U.S.C.

§ 1915(g), this ruling is intended to constitute a decision on the merits.[11]

XIII.   <u>The Motion to Appoint Counsel</u>

Bartlett seek appointment of *pro bono* counsel because he is indigent and lacks legal

knowledge.  In view of this Memorandum and Order holding that Bartlett has failed to state

plausible § 1983 claims and because this action is being dismissed, appointment of *pro bono*

counsel is not warranted.

Accordingly, Bartlett's Motion for Appointment of Counsel (Docket No. 3) will be

<u>DENIED</u>.

<u>CONCLUSION</u>

Based on the foregoing, it is hereby Ordered that:

---

[11]This Court does not make the determination as to whether the dismissal counts as a
strike, because it is subject to appellate review.  The Court only notes that this is a decision on
the merits.

1.      Plaintiff's renewed Motion for Leave to Proceed *in forma pauperis* (Docket No. 9) is
        <u>ALLOWED</u> and the filing fee is assessed pursuant to 28 U.S.C. § 1915(b);[12]

2.      Plaintiff's Motion for Appointment of Counsel (Docket No. 3) is <u>DENIED</u>; and

3.      This action is <u>DISMISSED</u> in its entirety pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and
        (iii) and § 1915A.


SO ORDERED.



                                        /s/ William G. Young
                                        WILLIAM G. YOUNG
                                        UNITED STATES DISTRICT JUDGE

DATED: July 15, 2013

---

[12]Notwithstanding the *sua sponte* dismissal of this action, Bartlett remains obligated to pay the $350.00 filing fee in installments as set forth in this Memorandum and Order.  <u>See</u> <u>Purkey v. Green</u>, 28 Fed. Appx. 736, 746 (10th Cir. 2001) ("Section 1915(b) does not waive the filing fee, however, nor does it condition payment of the filing fee on success on the merits. . . . Notwithstanding the district court's dismissal of plaintiff's action, he is still required to pay the full filing fee to the district court."); <u>McGore v. Wrigglesworth</u>, 114 F.3d 601, 604-607 (6th Cir. 1997) (filing fee due when complaint filed; dismissal of a complaint does not eliminate prisoner's obligation to pay the required fees).  The purposes of the Prison Litigation Reform Act would be undermined if a court were to order the return of the filing fee in the type of situation presented here.  Plaintiff has engaged the resources of the Court staff by filing this case, and of the Court in preliminary screening the Complaint and issuing the Procedural Order and this Memorandum and Order.  The filing fee -- which represents only a modest portion of the Court's cost of deploying its resources -- is a means to insure that resources are not consumed thoughtlessly.  Therefore, the Court will not vacate the Order assessing the filing fee against Bartlett.